**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TTG IMAGING SOLUTIONS, LLC, | ) | No. 2:21-cv-153 |
| Plaintiff, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| ANDREA LOVELL, an individual and d/b/a NUCMED SERVICE SPECIALISTS, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, TTG Imaging Solutions, LLC ("TTG"), by and through its attorneys, K&L Gates LLP, files the following Complaint for misappropriation of trade secrets, breach of contract, unfair competition, tortious interference with business relations, and preliminary and/or permanent injunctive relief (the "Complaint") against Andrea Lovell, both individually and d/b/a NucMed Service Specialists ("Lovell"), stating as follows:

## INTRODUCTION

1. Plaintiff TTG is a leading national provider of nuclear medicine products and imaging device services based in Pittsburgh, Pennsylvania.

2. Defendant Lovell resigned from her position with TTG as a Field Services Engineer and launched her own directly competitive business, NucMed Service Specialists ("NucMed").

These actions violate the confidentiality agreement Lovell signed with TTG, and misappropriate TTG's trade secrets and confidential information.

3. In fact, using a service contract and pricing structure that is substantively verbatim to the materials she used and was intimately familiar with while working for TTG, Lovell has targeted and continues to target TTG's clients.

4. TTG has suffered and will continue to suffer substantial damages from Lovell's material breaches of the confidentiality agreement and misappropriation of TTG's confidential and trade secret information.

5. By this action, TTG seeks to restrain and enjoin Lovell from engaging in activities in further breach of her confidentiality obligations, to halt her misappropriation of confidential information and trade secrets, and to recover damages suffered as a result of Lovell's wrongful acts.

## PARTIES

6. Plaintiff TTG Imaging Solutions, LLC is a Pennsylvania limited liability company with its principal place of business located at 2403 Sidney Street, Suite 220, Pittsburgh, Pennsylvania 15203.

7. On information and belief, Defendant Andrea Lovell is an adult citizen of the state of Georgia residing at 188 River Lake Drive, Eatonton, Georgia 31024.

## JURISDICTION AND VENUE

8. This action involves a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that certain claims arise under the laws of the United States and over other claims pursuant to its supplemental

jurisdiction under 28 U.S.C. § 1367, because such claims are so closely related to TTG's claim for misappropriation of trade secrets that they form part of the same case and/or controversy.

9. Additionally, jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332 as diversity exists among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10. Venue exists in this District pursuant to 28 U.S.C. § 1391(a) because TTG is headquartered in this judicial district and a substantial part of the events giving rise to this dispute and the damages sustained in this dispute occurred within this District.

## FACTS

**A.   TTG's Business**

11. TTG provides comprehensive solutions to the nuclear medicine and molecular imaging community through, *inter alia*, the sale and service of highly sophisticated medical imaging equipment, such as PET and CT scanners.

12. Recently, TTG has engaged in significant expansion, involving both the hiring of new employees and acquisition of other businesses aligned with its service model. TTG has expended substantial costs and resources in maintaining and expanding its business in this industry.

13. On February 28, 2019, TTG acquired Absolute Imaging Solutions ("AIS"), which provided sales and services to hospitals, physician practices, and imaging providers in 32 states.

14. TTG invests in a highly trained, professional field service team tasked with serving existing clients and developing new contacts within the healthcare industry.

15. In order to effectively market TTG's products and services to existing and prospective clients, members of the field service team – and most especially area team leads such

as Lovell – are provided with and otherwise have access to protected, highly confidential information relating to TTG's offerings, including data as to the structure of its services, pricing, marketing plans, and other information critical to TTG's competitive advantage.

16. To maintain a business advantage over competing providers, TTG and AIS protected and limited access to their proprietary pricing structures, marketing plans, business development initiatives, and service strategies.

**B.     TTG's Relationship with Lovell**

17. Prior to TTG's acquisition of AIS, Lovell served AIS as a Director of Operations. Lovell was hired by AIS on or about February 16, 2011.

18. As a Director of Operations, Lovell was responsible for, *inter alia*, implementing confidential business development initiatives, developing service proposals based off of confidential and proprietary data, and negotiating, executing, and servicing contracts with clients.

19. As part of those responsibilities, Lovell was intimately familiar with AIS' pricing structure, service model, business strategies, marketing plans, and client list.

20. Once TTG acquired the assets of AIS, Lovell continued in the role of Director of Operations through August 2019, after which time her title and role transitioned to that of Field Service Engineer. Serving as an area team lead for TTG, Lovell had operational responsibility throughout the state of Georgia.

21. Lovell's responsibilities with TTG were similar to those under AIS; however Lovell was now in receipt of and exposed to TTG's confidential, protected marketing, pricing, and business development strategies, inclusive of innovative, secret strategies relative to product and service offerings.

22. Lovell was an integral part of TTG's client-relations team.

23. As a senior member of TTG's field service team, Lovell had unrestricted access to certain confidential and proprietary information, including, but not limited to information concerning:

   a. Client lists;

   b. Pricing information – both generally and for particular clients;

   c. Profit margins and internal cost data;

   d. Product and service lists for specific clients; and

   e. Operational data for multiple accounts correlating with TTG's business strategy.

24. In September 2019, Lovell acknowledged and agreed to TTG's confidentiality policy.

25. Specifically, the confidentiality agreement provides in relevant part that:

It is the policy of the Company that all information about patients, clients, employee personnel data, operational and financial matters, and any sensitive material or information shall be, insofar as permitted or regarded by law, treated as strictly confidential.  No Company or Company related information, including without limitation: documents, notes, files, records, oral information, computer files or similar materials…may be removed from the workplace without permission of the Company.  Additionally, the contents of the Company's records or information otherwise obtained in regard to business may not be disclosed to anyone, except where required for a business purpose.  Employees must not disclose any confidential information, purposefully or inadvertently through casual conversation to any unauthorized person inside or outside [TTG]….

26. On August 2, 2020, Lovell tendered her resignation to TTG, effective August 3, 2020.

27. Shortly thereafter, Scott Wilson, an employee who frequently serviced medical

imaging equipment on accounts served by Lovell, also resigned from his employment with TTG.

## C.   Lovell Misappropriates TTG's Trade Secrets and Launches a New Business in Direct Competition With TTG

28. Shortly after terminating her employment with TTG, Lovell began doing business as NucMed Service Specialists.

29. Upon information and belief, Lovell recruited former TTG employee Scott Wilson to join her new business venture.

30. Upon information and belief, Lovell and NucMed service high tech medical imaging equipment.

31. On or about December 9, 2020, one of TTG's clients contacted TTG to cancel its service agreement with TTG. Shortly beforehand, another customer bought out an equipment lease with TTG such that, upon information and belief, they could transition the service contract to Lovell and NucMed.

32. Upon information and belief, the client terminated its relationship with TTG in order to enroll in competitive services provided by Lovell and NucMed.

33. On December 14, 2020, TTG sent Lovell a letter demanding that Lovell cease her solicitation of TTG's clients and misappropriation of TTG's trade secrets and confidential information immediately.

34. Lovell did not respond to TTG's outreach and continues to both solicit TTG's clients and misappropriate TTG's trade secrets and confidential information.

35. On or about January 22, 2021, another of TTG's clients provided TTG with a copy of a proposed agreement it had received from Lovell and NucMed. A true and accurate copy of the NucMed Service Agreement bearing Lovell's home address is attached here as Exhibit A.

6

36. The proposed agreement that Lovell and NucMed provided TTG's client is identical to the agreement used by AIS in virtually every way – the *only* substantive change is a minor modification to the choice of law provision. A true and accurate copy of the AIS Service Agreement is attached hereto as Exhibit B.

37. The specialized services and products offered by Lovell and NucMed are identical to those offered by TTG.

38. Without Lovell's knowledge and use of TTG's trade secrets, including but not limited to the detailed and specific client materials and business development strategies she was exposed to as Director of Operations at AIS and, later, TTG, as well as the specialized and confidential industry knowledge, product structures, and secret, proprietary information provided to Lovell in furtherance of managing sophisticated client relationships for nearly a decade, Lovell could not have effectively entered into the nuclear medicine market, and would not have done so.

39. Through her detailed and specific knowledge of TTG's pricing and internal cost models, Lovell is competing against TTG using its own protected, highly confidential information.

40. Lovell's actions are causing irreparable harm to TTG's goodwill in its business and with its clients and employees. As such, TTG is without an adequate remedy at law.

**D.   Lovell's Material Breaches of the Confidentiality Agreement**

41. At all relevant times, the confidentiality agreement was binding on Lovell and precluded Lovell from misappropriating TTG's proprietary information and ideas, and from purloining TTG's sales contracts for her own use.

42. By misappropriating TTG's confidential and trade secret information for use in her competitive enterprise and by otherwise utilizing information and materials owned by TTG, Lovell has breached the terms of the confidentiality agreement.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT (12 Pa.C.S.A. § 5301 *et seq.*)

43. Paragraphs 1 through 42 of the Complaint are hereby incorporated by reference as though set forth in full.

44. TTG's client lists, pricing structure, service models, internal cost data, and business plans are not known outside the company and are only disseminated to those TTG employees with a need to know such information.

45. TTG prevented disclosure of its trade secrets through all appropriate and necessary means, including requiring employees to execute a confidentiality acknowledgment.

46. TTG invested substantial time, resources, and expense into creating and developing its pricing structure, business concepts, service models, costing data, and marketing plans.

47. TTG took substantial steps and incurred substantial expense to maintain the confidentiality of the information and materials shared with Lovell.

48. TTG's proprietary business information is entitled to trade secret protection under the Pennsylvania Uniform Trade Secrets Act ("PUTSA"), 12 Pa.C.S.A. § 5301, *et seq.*, which allows an owner of trade secrets to recover damages for the misappropriation of its trade secrets.

49. Lovell had, and continues to have, a duty to maintain the secrecy of TTG's confidential and trade secret information, and had a duty to not use the information for Lovell's own financial gain, through NucMed or otherwise.

50. As alleged above, Lovell, through NucMed, used and will continue to use the confidential and trade secret information that she received during the course of her affiliation with AIS and TTG, and has therefore misappropriated TTG's trade secrets in violation of PUTSA.

51. By virtue of this improper conduct TTG has been irreparably harmed, and is entitled to collect damages, including but not limited to exemplary and punitive damages. In addition, Plaintiff has suffered and will continue to suffer irreparable harm, for which it is entitled to preliminary and permanent injunctive relief.

## COUNT II
## BREACH OF CONTRACT

52. Paragraphs 1 through 51 of the Complaint are hereby incorporated by reference as though set forth in full.

53. Through the confidentiality agreement, Lovell agreed not to disclose TTG's confidential and trade secret information, all as more fully described above.

54. Lovell has engaged in concerted and systematic efforts to misappropriate TTG's confidential and trade secret information and to use that information and related materials for Lovell's benefit.

55. Further, Lovell has used TTG's confidential and trade secret information to create her own business enterprise so that she can provide nuclear medicine services that are identical in nature to those provided by TTG.

56. TTG has fully performed all obligations to Lovell under the confidentiality agreement.

57. As a direct and proximate result of Lovell's material breaches of the confidentiality agreement, TTG has suffered damages in an amount in excess of $75,000, exclusive of interest and costs, in an amount to be determined at trial.

58. As a direct and proximate result of this breach and inevitable future breaches, TTG has suffered and will continue to suffer irreparable harm and money damages.

## COUNT III
## MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836 *et seq.*)

59. Paragraphs 1 through 58 of the Complaint are hereby incorporated by reference as though set forth in full.

60. TTG's client lists, pricing structure, service models, costing data, and business plans are not known outside the company and are only disseminated to those TTG employees with a need to know such information.

61. TTG prevented disclosure of its trade secrets through all appropriate and necessary means, including requiring employees to execute a confidentiality acknowledgment.

62. TTG invested substantial time, resources, and expense into creating and developing its pricing structure, business concepts, service offerings, costing data, and marketing plans.

63. TTG took substantial steps and incurred substantial expense to maintain the confidentiality of the information and materials shared with Lovell.

64. Lovell disclosed TTG's trade secrets using instrumentalities of interstate commerce.

65. TTG's proprietary business information is entitled to trade secret protection under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, which allows an owner of trade secrets to recover damages for the misappropriation of its trade secrets.

66. Lovell had, and continues to have, a duty to maintain the secrecy of TTG's confidential and trade secret information, and had a duty to not use the information for Lovell's own financial gain, through NucMed or otherwise.

67. As alleged above, Lovell, through NucMed, used and will continue to use the confidential and trade secret information that she received during the course of her affiliation with AIS and TTG, and has therefore misappropriated TTG's trade secrets in violation of DTSA.

68. By virtue of this improper conduct, TTG has been irreparably harmed, and is entitled to collect damages, including but not limited to exemplary and punitive damages. In addition, Plaintiff has suffered and will continue to suffer irreparable harm, for which it is entitled to preliminary and permanent injunctive relief and money damages.

## COUNT IV
## UNFAIR COMPETITION

69. Paragraphs 1 through 68 of the Complaint are hereby incorporated by reference as though set forth in full.

70. Lovell had, and continues to have, a duty to maintain the secrecy of TTG's confidential and trade secret information, and had a duty to not use the information for Lovell's own financial gain, through NucMed or otherwise.

71. As alleged above, Lovell, through NucMed, used and will continue to use the confidential and trade secret information that she received during the course of her employment with TTG, and has therefore misappropriated TTG's trade secrets.

72. Moreover, Lovell's actions substantially interfere with TTG's ability to compete with Lovell on the merits of the competitive, specialized services they provide.

73. As a result, Lovell's actions are anti-competitive and constitute an unfair method of competition.

74. As a result of Lovell's unfair competition, TTG has sustained damages to its business, goodwill, and reputation.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

75. Paragraphs 1 through 74 of the Complaint are hereby incorporated by reference as though set forth in full.

76. TTG is in the business of providing its clients with nuclear medicine products and services.

77. TTG's business is dependent on its contractual arrangements with its clients, including prospective, current, and past clients.

78. Lovell has openly and intentionally interfered with TTG's contractual relationships with current and prospective clients by soliciting TTG's clients through NucMed despite being prohibited from disclosing and/or using TTG's trade secrets and other confidential information.

79. Lovell has no privilege or justification in interfering with TTG's business relations.

80. As a direct and proximate result of Lovell's tortious interference with TTG's business relations, TTG has suffered, is suffering, and will continue to suffer irreparable harm, for which it is entitled to preliminary and permanent injunctive relief and money damages.

## COUNT VI
## PRELIMINARY AND/OR PERMANENT INJUNCTIVE RELIEF

81. Paragraphs 1 through 80 of the Complaint are hereby incorporated by reference as though set forth in full.

82. As stated above, Lovell has violated, and is continuing to violate, the terms of the confidentiality agreement by utilizing TTG's confidential information.

83. Further, Lovell has used and exploited, and is continuing to use and exploit, TTG's confidential and proprietary information and trade secrets.

84. TTG has been and will continue to be irreparably injured by Lovell's actions unless Lovell is enjoined from committing these unlawful acts.

85. TTG does not have an adequate remedy at law.

86. The injunctive relief sought by TTG is narrowly tailored to enjoin the unlawful activities of Lovell.

87. If Lovell is not estopped from committing the aforementioned unlawful conduct, TTG will continue to suffer irreparable harm, including but not limited to the unauthorized disclosure of its confidential and trade secret information, and loss of customers and potential customers, for which TTG is entitled to preliminary and permanent injunctive relief.

## **RELIEF REQUESTED**

WHEREFORE, TTG respectfully requests that this Court issue a judgment in its favor and enter an order:

(i) Enjoining Lovell from utilizing or disclosing any confidential or trade secret information, knowledge, data, or documents obtained from TTG or AIS;

(ii) Directing Lovell to return to TTG any and all confidential or trade secret information, knowledge, data, or documents obtained from TTG;

(iii) Directing Lovell to provide an accounting of all sums earned by Lovell from her actions described in the Complaint;

(iv) Awarding to TTG any and all monetary damages sustained as a result of Lovell's actions, including exemplary and punitive damages;

(v) Awarding to TTG the cost of the suit, including attorneys' fees, as well as pre- and post-judgment interest; and

(vi) Such other relief as the Court deems to be fair and appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: February 1, 2021 | /s/ David J. Garraux |
|  | David J. Garraux |
|  | PA ID No. 204350 |
|  | Laura K. Veith |
|  | PA ID No. 321680 |
|  | Jessica L.G. Moran |
|  | PA ID No. 325912 |
|  |  |
|  | K&L Gates Center |
|  | 210 Sixth Avenue |
|  | Pittsburgh, PA 15222 |
|  | T: 412-355-6500 |
|  | F: 412-355-6501 |
|  | david.garraux@klgates.com |
|  | laura.veith@klgates.com |
|  | jessica.moran@klgates.com |
|  |  |
|  | *Counsel for Plaintiff TTG Imaging Solutions, LLC* |